# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER D. HUSBAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-05-285-FHS-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Christopher D. Husband requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national

economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account

---

[1] Step one requires claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See id*. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account his age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on May 28, 1973, and was 31 years old at the time of the administrative hearing. He has a high school education and previously worked as a ride operator, tire technician, janitor, auto detailer, construction equipment operator, and pizza driver. The claimant alleges he has been unable to work since August 12, 2002, because of pain in the knees, hips, and shoulders, stress, and vision problems.

## Procedural History

On April 22, 2003, the claimant filed an application for disability benefits under Title II (42 U.S.C. § 401 *et seq.*). The application was denied. After a hearing on July 22, 2004, ALJ Larry Weber found the claimant was not disabled in a decision dated December 6, 2004. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found the claimant had a residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk for two hours in an eight-hour workday; and sit for six hours in an eight-hour workday. The claimant was limited to simple repetitive tasks not involving public contact (Tr. 19). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because

there was work he could perform in the regional and national economies, *e. g.*, assembly worker and hand worker (Tr. 20).

## Review

The claimant asserts that the ALJ erred: (i) by failing to evaluate the medical evidence properly; (ii) by finding he had the RFC to perform substantial gainful activity; and, (iii) by improperly analyzing his credibility. In his first assertion, the claimant argues that the ALJ improperly rejected the mental examination findings from consulting psychiatrist Dr. C.F. Mynatt, M.D. and ignored mental limitations imposed on the claimant by nonexamining psychologist Dr. Janice Smith, Ph.D. The undersigned Magistrate Judge finds this argument persuasive.

The record reveals that the claimant was diagnosed with post traumatic stress disorder ("PTSD") in 1997 when he was in the military. Although his records do not identify the event that resulted in such a diagnosis, the claimant was medically discharged on this basis (Tr. 127-30). The claimant was examined by Dr. Mynatt at the request of SSA in July 2003. The claimant reported frequent abuse as a child by his alcoholic father. He was suspicious of people and easily angered with some reaction physically and experienced periods of frustration and despair and thoughts he was better off dead. The claimant had problems working because of volatility and problems with memory and concentration. His wife was afraid of him, and he did not spend much time with his young children because he feared mistreating them. Dr. Mynatt noted that although the claimant appeared depressed and angry during the examination, he readily answered questions. He had longstanding symptoms of depression, involving difficulties with sleep, appetite, memory, concentration, energy, and

sex drive. Examination of intellectual functioning revealed that the claimant could adequately perform recall tasks and could add and subtract single digit numbers. He could not multiply and divide correctly. His abstract abilities and cognitive function appeared to be intact, his judgment was adequate, and his IQ was estimated to be greater than 80. Dr. Mynatt assessed the claimant with PTSD, intermittent explosive disorder, personality disorder, and a limitation of functioning score ("LOF") of 50. Dr. Mynatt thought the claimant was potentially dangerous, with intermittent explosive disorder as his debilitating symptom. He noted the claimant was completely withdrawn and seldom left home for fear he would lose control and harm others. Dr. Mynatt did not expect the claimant's condition to improve in the next twelve months (Tr. 170-73).

In September 2003, following Dr. Mynatt's examination of the claimant, Dr. Smith reviewed the evidence and completed a Psychiatric Review Technique ("PRT") form and an RFC assessment of the claimant's mental abilities. On the PRT form, Dr. Smith concluded the claimant had anxiety-related disorders and personality disorders resulting in moderate limitations in activities of daily living and in maintaining concentration, persistence, or pace and marked limitations in maintaining social functioning. The claimant had no episodes of decompensation of extended duration (Tr. 188-201). In assessing the claimant's mental limitations, Dr. Smith found the claimant moderately limited in his ability to understand, remember, and carry out detailed instructions and in his ability to maintain attention and concentration for extended periods of time. With regard to his social functioning, she found the claimant was markedly limited in his ability to interact appropriately with the public and moderately limited in his ability to accept instructions and

respond appropriately to criticism from supervisors and in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. In comments to her findings, Dr. Smith indicated the claimant could handle simple one-step tasks and some more detailed tasks that did not require intense concentration. He could work under routine supervision, complete a normal work day and work week, and adapt to a work setting. He could not, however, relate effectively to the general public and should work primarily alone with only occasional, brief, and superficial interaction with coworkers and supervisors (Tr. 185-87). The conclusions reached by Dr. Smith were reviewed and affirmed by an agency psychiatrist, Dr. Sally Varghese, M.D., in November 2003 (Tr. 187, 200).

The ALJ summarized Dr. Mynatt's evaluation, including his diagnoses of PTSD and intermittent explosive disorder (Tr. 16, 19). He disagreed with Dr. Mynatt's diagnosis of PTSD since a stressing event was not documented in the record. The ALJ concluded there was no abnormality found on the claimant's mental status or intellectual functioning exams. Based on these findings, he determined Dr. Mynatt's report was entitled to less weight because it was not supported by any clinical findings (Tr. 19). However, the record reveals that the claimant was diagnosed with PTSD while in the military and discharged on this basis (Tr. 127-30). There is nothing to indicate that the diagnosis of PTSD by the military or by Dr. Mynatt was unsupported. Absent such evidence, the ALJ was simply substituting his own opinion for that of the claimant's physicians, which he may not do. *See Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) ("The ALJ may not substitute his own opinion for that of claimant's doctor."), *citing Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 743 (10th Cir. 1993) and *Kemp v. Bowen*, 816 F. 2d 1469, 1475 (10th Cir.

-6-

1987). Further, the claimant's mental status examination was not normal. Dr. Mynatt noted that the claimant suffered from several symptoms of depression, *e. g.*, difficulties with sleep, appetite, memory, concentration, energy, and sex drive. Although these findings were likely partially based on the claimant's report of symptoms, they still constituted medical findings, *see Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Langley v. Barnhart*, 373 F.3d 1116, 1122 (10th Cir. 2004) (both noting "that a psychological opinion may rest either on observed signs and symptoms or on psychological tests" and that observations about a claimant's functional limitations "do constitute specific medical findings."), *citing* 20 C.F.R. Subpart P, App. 1 § 12.00 (B), and the ALJ should have treated them as such. *See also Thomas v. Barnhart*, 147 Fed.Appx. 755, 759-60 (10th Cir. Sept. 2, 2005) (finding that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements[,]" and that when an ALJ rejects an opinion on such a basis, it "impermissibly put[s] the ALJ in the position of judging a medical professional on the assessment of medical data.") [unpublished opinion].

With regard to Dr. Smith's assessment of the claimant's mental limitations, it appears the ALJ included some of the limitations in the claimant's RFC, *e. g.*, the ALJ limited the claimant to simple repetitive tasks involving no public contact (Tr. 19), but he simply ignored findings that the claimant was moderately limited in his ability to maintain attention and concentration for extended periods, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 185-87). The ALJ should have discussed this evidence and explained why he rejected it. *See, e. g., Clifton v. Chater,* 79 F.3d 1007, 1009-1010

(10th Cir. 1996) (the ALJ must discuss the "significantly probative evidence he chooses to reject."). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (finding that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.").[2] In this regard, Social Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *4. Thus, although the ALJ is not bound by a state agency physician's opinions, he may not simply ignore them and must at a minimum explain what weight he gives them. *Id*. at 2. *See also Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, *see* 20 C.F.R. § 404.1527(d), although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion."), *citing Goatcher v. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) [emphasis added].

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of Dr. Mynatt's report and Dr. Smith's mental RFC

---

[2] The ALJ's discussion of this evidence was particularly important since the vocational expert testified at the administrative hearing that when limitations on the claimant's ability to interact with coworkers and supervisors were included in the RFC, it was possible the claimant would not be able to maintain employment (Tr. 246).

assessment. If this analysis alters the claimant's mental RFC, the ALJ should then consider what impact, if any, this has on the claimant's ability to work.

## Conclusion

The undersigned Magistrate Judge finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Parties are herewith given ten (10) days from the date of this service to file with the Court Clerk any objections with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 16th day of February, 2007.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**